# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# AT LEXINGTON

**CIVIL ACTION NO. 13-144-DLB**

**JOSHUA RAY SCHULTS**                                                                               **PLAINTIFF**

vs.                   **MEMORANDUM OPINION AND ORDER**

**CAROLYN W. COLVIN,**                                                             **DEFENDANT**
**Commissioner of Social Security**

*******************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Joshua Ray Schults filed his current application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) payments, alleging disability as of February 25, 2007. (Tr. 233-44). Plaintiff's claim was denied initially and on reconsideration. (Tr. 138-47). On June 22, 2009, Administrative Law Judge Roger L. Reynolds conducted an administrative hearing at Plaintiff's request. (Tr. 173-89). ALJ Reynolds ruled that Plaintiff was not entitled to benefits on October 25, 2009. (Tr. 124-37).

The Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision and remanded the case to the ALJ for further proceedings. (Tr. 118-23). The

Council's remand instructions directed the ALJ to do the following: (1) remove exhibits from the record that did not pertain to Plaintiff; (2) "[o]btain additional evidence concerning the claimant's impairments, particularly Marfan's syndrome, in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence;" and (3) associate Plaintiff's original claim file and the file from his subsequent December 9, 2009 claim. (*Id.*). After conducting another administrative hearing, the ALJ again denied Plaintiff's request for benefits on September 20, 2011. (Tr. 17-38). This decision became the final decision of the Commissioner when the Appeals Council denied review on March 22, 2013. (Tr. 1-6).

On May 24, 2013, Plaintiff filed the instant action. (Doc. # 1). This matter has culminated in cross motions for summary judgment, which are now ripe for review. (Docs. # 15 and 16).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we

2

might have decided the case differently. See Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. See Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003); Preslar v. Sec'y of Health & Human Servs., 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 22). At Step 2, the ALJ found Plaintiff's Marfan's syndrome with thoracic aortic aneurysm (stable), major depressive disorder, anxiety disorder (NOS) with panic disorder, alcohol and marijuana abuse (allegedly in short term remission), hypertension, decreased vision in right eye, schizoaffective disorder and learning disorder to be severe impairments within the meaning of the regulations. (Tr. 23).

At Step 3, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to, an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 23-24). In reaching this conclusion, the ALJ found that Plaintiff's Marfan's syndrome with thoracic aortic aneurysm did not meet the

requirements of Listing 4.00 (cardiovascular system) or its subsections because he has not had a limited exercise tolerance test or drug-induced stress test, nor has he experienced chronic heart failure, ischemic episodes requiring revascularization, recurrent arrhythmias, systematic congenital heart disease, heart transplant or peripheral artery disease. (Tr. 23). The ALJ also determined that Plaintiff's mental impairments, considered singly and in combination, do not meet the requirements of Listing 12.03 (schizophrenic, paranoid and other psychotic disorders), Listing 12.04 (affective disorders), Listing 12.06 (anxiety related disorders) or Listing 12.09 (substance addiction disorders) because he has only moderate limitations in social functioning, as evidenced by his daily activities, and has not experienced episodes of decompensation. (Tr. 23-24).

At Step Four, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform a limited range of light work, as defined in 20 CFR § 404.1567(b) and 20 C.F.R. § 416.967(b); that is:

> [L]ifting and carrying up to twenty pounds in an eight hour day, except he cannot climb ropes ladders or scaffolds; cannot engage in more than occasional climbing of stairs or ramps; cannot engage in aerobic activities such as running or jumping; cannot work on fast paced assembly lines or rigid production schedules; cannot work with his hands over his head, work at heights, or balance; cannot engage in more than occasional stooping or crawling; cannot be exposed to concentrated dust, gases, smoke, fumes or poorly ventilated spaces; cannot be exposed to concentrated humidity, temperature extremes, vibration or industrial hazards; or perform work requiring acute vision or binocular vision. He requires entry level work with simple repetitive procedures; no frequent changes in work routines; and no requirement for detailed or complex problem solving, independent planning or the setting of goals. He should work in an object oriented environment with only occasional and casual contact with coworkers, supervisors or the general public.

(*Id.*). The ALJ concluded that the claimant is unable to perform any past relevant work. (Tr. 28).

4

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 28-29). The ALJ based this conclusion on testimony from a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC.[1] (Tr. 29). The VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC could find work at the light level of exertion as an inspector (1,700 Kentucky/560,000 nationally) or non-hazardous security worker (2,500 Kentucky/380,000 nationally). (*Id.*). Based on the testimony of the VE and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other work and thus concluded that he was not under a "disability," as defined by the Social Security Act. (Tr. 87).

**C.     Analysis**

Plaintiff advances five arguments on appeal. First, Plaintiff believes that the ALJ failed to obtain additional evidence pertaining to Marfan's syndrome, as directed by the Appeals Council. Second, Plaintiff argues that the ALJ erred in finding that Plaintiff's cervical and lumbar degenerative disc disease was not a severe impairment within the meaning of the Regulations. Although not treated separately in the briefing, Plaintiff's third argument takes issue with the ALJ's alleged failure to incorporate functional limitations caused by degenerative disc disease into the RFC assessment. Fourth, Plaintiff contends that the ALJ unfairly assessed Plaintiff's credibility, and as a result, improperly assigned

---

[1] The ALJ pointed out that Medical Vocational Rule 202.17 would require a finding of "not disabled" if Plaintiff had the RFC to perform a full range of light work. (Tr. 29). However, the ALJ noted that Plaintiff was "impeded by additional limitations," and incorporated these limitations into the hypothetical questions posed to the VE. (*Id.*).

5

Plaintiff a light RFC. Fifth, Plaintiff asserts that the ALJ improperly relied on the VE's response to a hypothetical question incorporating the allegedly inaccurate RFC. Each of these arguments will be addressed in turn.

### 1. The ALJ complied with the Appeal's Council's remand instruction

There is no consensus among federal courts "as to whether an ALJ's failure to follow Appeals Council directives may serve as independent grounds for reversal absent other error." *Long v. Comm'r Soc. Sec.*, Civ. A. 11-cv-343, 2012 WL 4009597 at *9 (S.D. Ohio Sept. 12, 2012)(surveying cases from other circuits and conducting its analysis by "assum[ing], without deciding, that an ALJ's failure to follow the Appeals Council's directives may serve as independent grounds for reversal"). Differing opinions exist not only between circuits, but also among courts within the Sixth Circuit, which has not considered this particular issue. *Compare Brown v. Comm'r of Soc. Sec.*, No. 1:08-cv-183, 2009 WL 465708 at *5 (W.D. Mich. Feb. 24, 2009)(deciding that plaintiff's appeal, taking issue with the ALJ's alleged failure to follow the Appeals Council's remand order, was inappropriate because it sought judicial review of an internal agency matter) *with Salvati v. Astrue*, 2010 WL 546490 (E.D. Tenn. Feb. 10, 2010)(concluding that the ALJ's failure to follow the Appeals Council's instructions was an error necessitating remand).

In *Long*, the court considered whether the ALJ had complied with several remand instructions from the Appeals Council, noting that "the closest call appears to be whether [the ALJ] satisfied the directive to obtain additional evidence." 2012 WL 2156713 at *9. Although the ALJ did not obtain medical expert testimony or arrange for a consultative examination, she did accept and consider medical evidence related to matters that

occurred after the first ALJ decision.  *Id.*  Because the remand instructions gave the ALJ discretion to evaluate the need for further action, directing her to obtain medical expert testimony "if necessary" and acquire a consultative mental examination "if warranted," the Court concluded that the ALJ's actions were sufficient "[u]nder these circumstances, and given the general ambiguity of this mandate, [that the Court] cannot conclude that [the ALJ] erred in this regard."  *Id.*

In this case, the Appeals Council directed the ALJ to do the following upon remand:

> Obtain additional evidence concerning the claimant's impairments, particularly Marfan's syndrome, in order to complete the administrative record in accordance with the regulatory standards regarding consultative examination and existing medical evidence (20 CFR 404.1512-1513 and 416.912-913).  The additional evidence may include, if warranted and available, a consultative orthopedic examination and/or consultative internal examination, and medical source statements about what the claimant can still do despite the impairments.

(Tr. 121).

The record contains several medical exhibits that post-date the ALJ's October 23, 2009 hearing decision, including the following: (1) a Pathways treatment note dated January 20, 2010; (2) a consultative examination report from Dr. Naushad Haziq, dated January 27, 2010; (3) a consultative examination report from Dr. Emily Skaggs, dated February 4, 2010; (4) a mental RFC assessment from DR. Ed Ross, dated March 3, 2010; (5) treatment notes from UK Cardiology, dating from April 2009 to March 2010; (6) a physical RFC assessment from Dr. Darrell R. Caudill, dated April 15, 2010; (7) a physical RFC assessment from Dr. Robert K. Brown, dated July 20, 2010; (8) a mental RFC assessment from Dr. Mary K. Thompson, dated July 21, 2010; (9) treatment notes from Claire Regional Medical Center, dated September 11, 2010; (10) treatment notes from Gill

7

Heart Institute, dated April 18, 2011; (11) treatment notes from Family Care Clinic, dated April 20, 2011; and (12) treatment notes from Kentucky Clinic, dating from March 2010 to April 2011. (Tr. 1100–09; 1117–24; 1130–56; 1227–53; 1259–93; 1406–18). There is also an undated article from the National Marfan Foundation that appears to have been added after remand, judging by its placement in the record. (Tr. 858-69). To supplement these additions to the record, Plaintiff and a VE testified at a second administrative hearing, conducted on August 31, 2011. (Tr. 40–82).

Much like the remand instructions at issue in *Long*, the Appeals Council's directive left the ALJ with some discretion in assembling additional evidence. While the Appeals Council did ask for more evidence regarding Plaintiff's Marfan's syndrome, it did not require the ALJ to gather that evidence in any particular format. The instructions simply state that the ALJ could obtain a consultative orthopedic examination and/or consultative internal examination, *if warranted and available.* While it is unclear which of these exhibits were obtained by the ALJ in response to the remand instructions and which were already included in the associated claim file, there is no doubt that these exhibits add much to the administrative record. The ALJ clearly gave consideration to these additional exhibits in rendering his second hearing decision, as evidenced by his frequent citations to the most recent consultative examinations and RFC assessments. (Tr. 17–38). Although not dispositive of this issue, it is worth noting that the Appeals Council upheld the ALJ's second hearing decision. It stands to reason that the Council would only have upheld the decision if it was satisfied with the ALJ's development of the record. Therefore, the Court finds no error in the ALJ's effort to follow the Appeals Council's remand instructions.

## 2. The ALJ did not err in finding that Plaintiff's cervical and lumbar degenerative disc disease were not severe impairments

The second step in the disability evaluation process requires the ALJ to consider the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii); Soc. Sec. Rul. 96-3p, 1996 WL 374181 at *1 (July 2, 1996). An impairment is considered severe if it "significantly limits an individual's physical or mental ability to perform basic work activities." 20 C.F.R. § 404.1521(b). Basic work activities, defined as those "abilities and aptitudes necessary to do most jobs," include the following: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for hearing, seeing and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* The claimant's impairments must have lasted or be expected to last for a continuous twelve month period, unless the condition is expected to result in death. 20 C.F.R. § 404.1520©; 20 C.F.R. § 404.1509.

When medical reports or laboratory findings demonstrate that the claimant has a "medically determinable impairment(s) that could reasonably be expected to produce [his or her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms" in order to determine how these symptoms limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). Before making this determination, the ALJ must consider all available evidence, including objective medical evidence, claimant's own statements about symptoms, opinions from treating and examining physicians, and any other relevant evidence in the case record. 20 C.F.R. §

404.1529(c)(1)–(3). The claimant's symptoms "will be determined to diminish [his or her] capacity for basic work activities to the extent that [his or her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4).

Because the Sixth Circuit has interpreted "the step two severity regulation as a '*de minimis* hurdle' in the disability determination process," meant to screen out totally frivolous claims, the severity of the impairment is "liberally construed in favor of the claimant" at this step in the analysis. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985); *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 428 (6th Cir. 2007). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Higgs*, 880 F.2d at 862 (citing *Farris*, 773 F.2d at 90).

If the ALJ finds that at least one of the claimant's alleged impairments is severe in nature, the claim survives the step two screening process. 20 C.F.R. § 404.1520(a)(4). Because the Regulations instruct the ALJ to consider both severe and non-severe impairments in the remaining steps of the disability determination analysis, any impairment erroneously labeled as "non-severe" will not be ignored altogether. 20 C.F.R. § 404.1545(a)(2). For this reason, courts have consistently held that an ALJ does not commit reversible error when he or she decides that some of claimant's impairments are not severe, but finds that other impairments are severe and proceeds with his or her analysis. *Maziarz v. Sec'y Health & Human* Serv., 837 F.2d 240, 244 (6th Cir. 1987) ("Since the Secretary properly could consider claimant's cervical condition in determining whether

claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); *McGlothin v. Comm'r,* 299 Fed. Appx. 516, 522 (6th Cir. 2008)(finding it "legally irrelevant" that the ALJ determined that some of claimant's impairments were severe and some were not because "once any one impairment is found to be severe, the ALJ must consider both severe and non-severe impairments in the subsequent steps").

In this case, the ALJ noted that Plaintiff had "mild scoliosis in the lumbar spine, mild tenderness and spasm in the back and neck, and mild limitations of movement of the spine" due to his degenerative disc disease. (Tr. 23). However, the ALJ concluded that this condition did not constitute a severe impairment because three years of medical records consistently referenced Plaintiff's good range of motion with intact muscle strength. (*Id.*). This determination did not preclude the ALJ from finding that Plaintiff had several other severe impairments, including Marfan's syndrome with thoracic aortic aneurysm (stable), major depressive disorder, anxiety disorder (NOS) with panic disorder, alcohol and marijuana abuse (allegedly in short term remission), hypertension, decreased vision in right eye, schizoaffective disorder and learning disorder. (*Id.*). Having found that Plaintiff suffered from severe impairments, the ALJ had to consider severe and non-severe impairments in completing the disability determination analysis. Therefore, the ALJ did not err in finding that Plaintiff's cervical and lumbar degenerative disc disease were not severe impairments within the meaning of the applicable regulations.

### 3. The ALJ gave due consideration to Plaintiff's non-severe impairment in rendering his RFC assessment

An RFC assessment expresses the maximum amount of activity a claimant can engage in at work despite his or her physical and/or mental limitations. 20 C.F.R. § 404.1545(a)(1). In rendering this assessment, the ALJ must consider all medically determinable impairments, severe and non-severe, and take into account all relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(2)-(3). Such evidence includes statements from medical sources relating to the claimant's abilities and statements from the claimant describing the severity of his or her symptoms. *Id.* The ALJ should then identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, taking into account the following functions: 1) physical abilities, such as sitting, standing, walking, lifting, carrying, pushing and pulling; 2) mental abilities, such as understanding, remembering, and carrying out instructions, and responding appropriately to supervision, co-workers, and work pressures in a work setting; and 3) any other abilities affected by his/her impairment(s). Soc. Sec. Rul. 96-8p, 1996 WL 374184 at *1 (July 2, 1996). Only after an ALJ has performed this function-by-function evaluation may a claimant's RFC be expressed in terms of sedentary, light, medium, heavy or very heavy work. *Id.*

Plaintiff maintains that the ALJ should have incorporated functional limitations caused by degenerative disc disease into the RFC assessment. In particular, Plaintiff cites to several treatment notes, as well as opinions from Dr. Alegria and Dr. Haziq, that the ALJ should have relied on. (Doc. # 15-1 at 5-7). However, the record reveals that the ALJ did consider the medical evidence and opinions cited by Plaintiff. For example, the ALJ

references Dr. Alegria's opinion that Plaintiff could lift and carry twenty pounds occasionally, stand/walk about four hours in an eight hour working day, sit about four hours in an eight hour working day, and occasionally stoop. (Tr. 26). He also references Dr. Haziq's "vague statement that the claimant was moderately to severely limited in his ability to perform work related activities." (*Id.*).

However, the ALJ pointed out in the hearing decision, that there is other evidence in the record to qualify the opinions offered by Dr. Alegria and Dr. Haziq. For example, Dr. Kingsolver stated that Plaintiff's Marfan's syndrome "markedly diminished his ability to perform *heavy* labor." (*Id.*)(emphasis added). Other state agency consultants opined that Plaintiff could perform work at the light level of exertion, with occasional climbing of ramps and stairs, balancing, stooping and crawling, and no concentrated exposure to hazards. (*Id.*). The record also indicated that Plaintiff was quite self-sufficient in activities of daily living, managing to care for his children, go to church, visit with friends, and complete household chores in spite of "feeling tired all the time." (Tr. 27).

While the ALJ did not specifically mention Plaintiff's degenerative disc disease, he considered medical evidence and opinions that bore directly on Plaintiff's Marfan's syndrome, which is closely intertwined with Plaintiff's degenerative disc disease. After reviewing this evidence, the ALJ incorporated the functional limitations he found to be justified, such as a diminished ability to lift, stoop, stand and sit, into the RFC assessment. Plaintiff's argument must fail because the ALJ's findings are supported by substantial evidence. Since the ALJ need only incorporate functional limitations that he finds to be justified into the RFC assessment, the Court finds no error.

13

### 4. The ALJ did not err in his assessment of Plaintiff's credibility

Although relevant to the RFC assessment, a claimant's description of his or her symptoms is not enough, on its own, to establish the existence of physical and/or mental impairments or disability. Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *2 (July 2, 1996). When evaluating a claimant's symptoms, the ALJ must determine whether there is an underlying medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *Id.* Once that is established, the ALJ must "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individuals' ability to do basic work activities." *Id.*

When the claimant's description of his or her symptoms is not supported by objective medical evidence, the ALJ must assess the credibility of the claimant's statements based on the entire case record, including medical and laboratory findings, claimant's statements, information provided by treating or examining physicians about how the symptoms affect the claimant, and any other relevant evidence. *Id.* The ALJ may also consider the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects off any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives for pain relief; any other measures used for pain management; and any other factors concerning the claimant's limitations due to symptoms. *Id.* at *3. Credibility determinations based solely on intangible or intuitive notions are impermissible. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

14

Plaintiff complains that the ALJ unfairly assessed his credibility by "summarily conclud[ing] that [Plaintiff] could do light level work because he is independent in self-care and visits with family without discussing in any detail how the limited quality of those activities equal the ability to perform light level work activity on a sustained daily basis." (Doc. # 15-1 at 11–12). Plaintiff further complains that the ALJ did not adequately explain his adverse credibility determination. (*Id.*). However, the record indicates that the ALJ properly engaged in the two part test for evaluating symptoms. (Tr. 25–28). First, he found that Plaintiff had medical impairments that could reasonably be expected to cause those symptoms. (Tr. 25). He then proceeded to compare Plaintiff's testimony regarding the severity and persistence of his symptoms against the objective medical evidence, ultimately finding that the two were inconsistent. (Tr. 25–28).

The ALJ then explained in some detail the inconsistencies between Plaintiff's testimony and the objective medical evidence. First, the ALJ noted that, despite Plaintiff's testimony that he has had two heart attacks, the medical records only show evidence of chest pain in 2007. (Tr. 26). In fact, tests demonstrated that Plaintiff's cardiac enzymes were negative for a myocardial infarction. (*Id.*). During subsequent examinations, Plaintiff denied experiencing chest pain or shortness of breath. (*Id.*). The ALJ then noted that Plaintiff's hypertension and aneurysm had been under control for several years. (*Id.*). Finally, the ALJ emphasized that Plaintiff was able to continue with many of his daily activities, such as washing dishes, doing laundry, shopping for groceries, preparing meals, visiting with family and attending church. (Tr. 26–27). While "[t]he claimant alleges that he is tired all the time, [ ] he is active enough to take care of his children, ride his ATV, and ride around and drink with his friends." (*Id.*).

Plaintiff also diminished his own credibility by giving dishonest, or at least inaccurate, testimony at his first administrative hearing. (Tr. 27). Although Plaintiff stated that he did not drink and only took a few puffs of marijuana in order to sleep at night, Plaintiff subsequently admitted to Pathways staff that he had a history of drug and alcohol abuse. (*Id.*). Since the first hearing, Plaintiff was admitted to the emergency room with injuries sustained while drinking. (*Id.*). He was later involved in a DUI collision, which ultimately cost him his license. (*Id.*).

Based on its review of the record, the Court finds that the ALJ did not err in concluding that Plaintiff's symptoms were inconsistent with the objective medical evidence. The ALJ also explained his reasons for making an adverse credibility assessment as to Plaintiff. While it is not for the ALJ to pass judgment on the morality of Plaintiff's lifestyle choices, those choices are relevant to Plaintiff's credibility. The ALJ was understandably not inclined to give great weight to Plaintiff's statements, considering the dubious quality of his prior testimony. After making his determinations, which this Court has already upheld, the ALJ incorporated the limitations that he found to be justified in assigning a light RFC. Accordingly, the Court finds no error.

### 5. The ALJ relied on the VE's response to an appropriate hypothetical question

In posing a hypothetical question to a vocational expert, an ALJ must accurately describe Plaintiff's functional limitations. *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779. (6th Cir. 1987). However, the ALJ need only incorporate those limitations he finds to be credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

In this case, the ALJ asked the VE to suppose someone with Plaintiff's age, education, work experience and residual functional capacity, and asked whether jobs exist in the national economy for such an individual. (Tr. 29). The VE replied that there were, giving representative occupations. (*Id.*). Put another way, the ALJ incorporated the limitations that he found to be credible. Because the ALJ's determinations as to Plaintiff's functional limitations were reviewed above and found to be sound, the Court finds no error in the hypothetical posed to the VE.

### III. CONCLUSION

Accordingly, for the reasons stated, **IT IS ORDERED** as follows:

1. The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. # 15) is hereby **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. # 16) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 27th day of February, 2014.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\SocialSecurity\MOOs\Lexington\13-144 Schults MOO.wpd